

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | |
|---|---|
| MARTIN M. ARLOOK, ] | |
| Regional Director of the Tenth Region ] | |
| of the National Labor Relations Board, ] | |
| for and on behalf of the National ] | |
| Labor Relations Board, ] | |
| ] | |
| Plaintiff, ] | 6:11-CV-01774-LSC |
| ] | |
| vs. ] | |
| ] | |
| NTN-BOWER CORPORATION, ] | |
| ] | |
| Defendant. ] | |

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration a Petition for Injunction Under Section 10(j) of the National Labor Relations Act, as Amended, which was filed on May 27, 2011, by Martin M. Arlook, Regional Director of the Tenth Region of the National Labor Relations Board ("the Board"), for and on behalf of the Board ("Petitioner").  (Doc. 1.)  Petitioner seeks a temporary injunction pending the final disposition of a Complaint alleging that NTN-Bower Corporation ("NTN" or "Respondent") engaged in, and is engaging in, acts

and conduct in violation of sections 8(a)(1) and (5) of the National Labor Relations Act, 29 U.S.C. § 151, *et seq.* (the "NLRA"). The issues raised in the Petition have been fully briefed by the parties and are ripe for decision. After full consideration of the arguments and evidence presented, the Court finds that the Petition is due to be denied.

II.   Background.

On or about January 31, 2011, the International United Automobile & Agricultural Workers of America, AFL-CIO, CLC ("the Union"), filed Charge 10-CA-38816 ("the Charge") with the Board, alleging that Respondent had engaged in violations of sections 8(a)(1) and (5) of the NLRA. Specifically, the Union charged Respondent with unlawfully withdrawing recognition from the Union on December 31, 2010, and unlawfully prohibiting Union representatives from engaging in a required safety tour on January 27, 2011. Following an investigation of the Charge, General Counsel of the Board issued a Complaint and Notice of Hearing on March 30, 2011. A hearing was held before Board Administrative Law Judge Michael Marcionese in Birmingham, Alabama, on May 10-11, 2011.

The Board contends that the NLRA violations alleged in the Charge are the result of a history of unlawful labor practices by Respondent. The Union has been the majority collective bargaining representative for a unit of Respondent's production and maintenance employees since 1976. The unit includes all production and maintenance employees, excluding temporary, office clerical, plant clerical, technical, and professional employees. The unit also excludes quality control technicians, laboratory technicians, guards, watchmen, and supervisors.

In July 2007, 153 bargaining unit members began a strike against Respondent. The strike did not end until nearly a year later, on July 23, 2008. When the strike ended, the Union accepted Respondent's best offer for a collective bargaining agreement, which is effective until December 28, 2012. Respondent had substantially filled all available bargaining unit jobs with permanent replacements and temporary employees. It is undisputed that during the strike, striking workers and their supporters engaged in harassment and acts of violence against permanent replacement employees ("PRs"). This conduct included: calling the PRs "niggers" and telling them to go back to Africa; calling the PRs "wet backs" and telling them to go back

to Mexico; calling the PRs and the line crossers scabs and sons of bitches; slashing tires on PRs' vehicles; scattering nails in the driveways of PRs' homes; threatening PRs with bodily harm and making death threats against some of them; accosting PRs at the picket line; attempting to cause PRs personal injury by hurling projectiles at them; damaging PRs' vehicles by throwing objects through windows; hitting PRs with picket signs; scattering nails on Respondent's driveway causing flats; attempting to follow PRs home; assaulting PRs in the community; spitting tobacco at PRs; and sexually harassing female Prs.

On May 20, 2009, the Regional Director of the Tenth Region issued a Fifth Amended Consolidated Complaint and Notice of Hearing to address a number of charges filed by the Union against Respondent.  The charges were filed between March 2008 and April 2009.  After a hearing on June 8, 2009, Administrative Law Judge John West issued a decision finding that Respondent had committed a number of unfair labor practices.  With the exception of one small aspect of his decision, Judge West's findings were affirmed by the Board.  Judge West determined that Respondent violated the NLRA by:

(1) Threatening employees who were former strikers with the loss of their reinstatement rights if they failed to sign Respondent's Return To Work Log;

(2) Orally promulgating a rule denying employee union representatives access to bulletin boards at Respondent's facility;

(3) Engaging in surveillance of its employees' union activities by monitoring the movements of employee union representatives in and around the facility;

(4) Requiring former strikers, as a condition of exercising their reinstatement rights, to sign Respondent's Return To Work Log;

(5) Refusing to offer reinstatement to or to reinstate former strikers to their former or substantially equivalent positions of employment, where those positions had not been filled with permanent replacement employees;

(6) Verbally implementing a rule requiring all former strikers to sign a unilaterally implemented Return to Work Log;

(7) Unilaterally implementing the following changes to the terms and conditions of employment of the unit employees:
    a. Relocated the Union's office at the facility;
    b. Established new rules that impeded employees' access to their Union representatives;
    c. Promulgated a rule restricting access to the employees' break room by employee union representatives;
    d. Denied representatives of the Union access to the facility; and
    e. Modified to the work week of bargaining unit employees;

> (8) Failing and refusing to provide the Union with the addresses of the permanent replacement employees after the strike ended;
> (9) Failing and refusing to provide the Union with information regarding a picket line confrontation involving a non-striking employee/replacement worker;
> (10) Failing and refusing to provide the Union with copies of the employment applications submitted by permanent replacement employees;
> (11) Failing and refusing to provide the Union with information concerning the pension plan covering the bargaining unit employees;
> (12) Failing and refusing to provide the Union with any documentary information about Respondent's decision to modify the work week schedule of its employees; and
> (13) Failing and refusing to provide the Union with any documents concerning the employment history of each employee in the bargaining unit.

On October 8, 2010, a bargaining unit employee filed a decertification petition. The petition was administratively dismissed by the Board based on Judge West's decision that the Respondent had engaged in unfair labor practices that would interfere with employees' free choice in an election and analysis under *Master Slack Corp.*, 271 NLRB 78 (1984). Respondent's request for review was denied.

On December 17, 2010, Respondent received a petition signed by 102 of 153 bargaining unit employees at the Hamilton, Alabama, plant. The petition indicated that the employees no longer wanted to be represented by the Union. The signers consisted of PRs and employees who crossed the picket line—individuals who suffered harassment and violence at the hands of Union members and their supporters. After verifying the authenticity of the signatures, Respondent notified the Union that it was withdrawing recognition, effective January 1, 2011. Since that date, Respondent has refused Union representatives access to the Hamilton plant. The withdrawal of recognition and denial of access to Union representatives serves as the basis for the Complaint currently under consideration by Judge Marcionese. The Board seeks a temporary injunction from this Court while Judge Marcionese formulates his decision.

III.   Analysis.

Under § 10(j) of the NLRA:

> The Board shall have power, upon issuance of a complaint . . . charging that any person has engaged in or is engaging in an unfair labor practice, to petition any United States district court . . . for appropriate temporary relief or restraining order.

> [The district court] shall have jurisdiction to grant to the Board such temporary relief or restraining order as it deems just and proper.

29 U.S.C. § 160(j).  "Congress enacted § 10(j) because administrative resolution 'was so time-consuming that guilty parties could violate the Act with impugnity [sic] during the years of pending litigation, thereby often rendering a final order ineffectual or futile.'" *Arlook v. S. Lichtenberg & Co.*, 952 F.2d 367, 371 (11th Cir. 1992) (quoting *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185, 1188 (5th Cir. 1975)[1]).  In the Eleventh Circuit, "a district court should grant the Board's request for § 10(j) equitable relief only when (1) there is reasonable cause to believe that the alleged unfair labor practices have occurred, and (2) the requested injunctive relief is just and proper."[2]  *Id.* (citations and quotations omitted).

---

[1] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to close of business on September 30, 1981.

[2] Respondent argues that the Court should reject this "two-prong" standard as "incorrect/incomplete" and follow the traditional "four-prong" standard adopted by the First, Seventh, Eighth, and Ninth Circuits. (Doc. 26 at 36-38.)  Respondent concedes that the two-prong standard was applied by the Eleventh Circuit Court of Appeals in *South Lichtenberg & Company*, 952 F.2d 367 (11th Cir. 1992), but Respondent argues that the Court should disregard that decision because no one in that case argued for a different standard.  (*Id.* at 37.)  The two-prong standard, however, was set forth by the Fifth Circuit Court of Appeals in *Boire v. Pilot Freight Carriers, Inc.*, 515 F.2d 1185 (5th Cir. 1975), and *Boire v. International Brotherhood of Teamsters, Chauffeurs, Warehousemen*

A.   Reasonable Cause.

"The district court's role in determining whether or not there is reasonable cause to believe that labor violations have occurred is limited to evaluating whether the Board's 'theories of law and fact are not insubstantial and frivolous.'" *Id.* (quoting *Pilot Freight*, 515 F.2d at 1189). "This evaluation has two components- a legal question, and a factual threshold. With respect to the first component, the standard is clear- the Board must present a substantial, nonfrivolous, coherent legal theory of the labor violation." *Id.* In order to satisfy the factual threshold, the Board must present enough evidence in support of its coherent legal theory to permit a rational factfinder, considering the evidence in the light most favorable to the Board, to rule in favor of the Board." *Id.*

Respondent does not dispute that the Board has presented a coherent legal theory. For purposes of this opinion, the Court assumes, without

---

*& Helpers of America*, 479 F.2d 778 (1973). These decisions were adopted by the Eleventh Circuit as binding precedent in *Bonner v. City of Pritchard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc). "Only a decision by the [Eleventh Circuit Court of Appeals] sitting en banc or by the United States Supreme Court can overrule a prior panel decision." *U.S. v. Machado*, 804 F.2d 1537, 1543 (11th Cir. 1986). This Court is bound by Eleventh Circuit law and required to apply the two-prong standard.

deciding, that there is sufficient evidence to establish that the Board had reasonable cause to believe Respondent violated §§ 8(a)(1) and (5) of the NLRA when it withdrew recognition of the Union on January 1, 2011, and subsequently denied access to Union representatives.

B.   Just and Proper.

However, "[i]n addition to proving reasonable cause to believe that labor violations have occurred, the Board must show that equitable relief is 'just and proper' given the circumstances of the case." *S. Lichtenberg & Co.*, 952 F.2d at 372. "Injunctive relief under § 10(j) is 'just and proper' whenever the facts demonstrate that, without such relief, "any final order of the Board will be meaningless or so devoid of force that the remedial purposes of the [NLRA] will be frustrated." *Id*. (quoting *Pilot Freight*, 515 F.2d at 1192). The Eleventh Circuit has refused to delineate a complete list of factors to consider when determining whether injunctive relief is "just and proper." Instead, the appellate court noted "only that the relevant case law indicates that § 10(j) relief becomes "just and proper" when organizational efforts are highly susceptible to being extinguished by unfair labor practices, when unions and employees have already suffered

substantial damage from probable labor violations, and when the violations reasonably found to have been committed will be repeated absent an injunction." *Id.*

In *Arlook v. South Lichtenberg & Co.*, the Eleventh Circuit found that the Board presented "exactly the kind of evidence which, when taken together, demands a conclusion of equitable necessity." *Id.* at 373. In *South Lichtenberg & Co.*, the Board presented evidence that the Union was only recently certified and the employees were bargaining for their first contract—meaning bargaining units were highly susceptible to management misconduct. *Id.* The Board also presented evidence of actual damage inflicted by management's actions: employees' testimony that they were afraid to participate in union activities for fear of losing their jobs. Finally, the Board established for the court that damage would continue absent interim relief because evidence showed that retaliation against employees was likely to continue if they showed union support. *Id.*

In this case, the Board has not presented the kind of evidence that demands a conclusion of equitable necessity. In arguing that injunctive relief is "just and proper," the Board focuses on the damage caused by the

continued effects of previous unfair labor practices—not the unfair labor practices that are the subject of the Complaint currently under consideration by Judge Marcionese. The previous unfair labor practices, while relevant to the determination whether NTN could lawfully rely on its employees' petition in December 2010, when it withdrew recognition of the Union, are not before this Court as a basis for equitable relief.

Both parties concede that the purpose of temporary injunctive relief is to restore and preserve the *status quo ante*, such that if a final determination is issued in the Board's favor, that final determination will not be meaningless. (*See, e.g.*, Doc. 11 at 7, 25-26; Doc. 26 at 66.) However, the Board admits that the *status quo* prior to the violations specifically at issue in this case is a work environment where:

-102 of 153 bargaining unit employees do not want to be represented by the Union;

-102 of 153 bargaining unit employees are not members of the Union, have not seen and have not received a copy of the collective bargaining agreement, have not visited the Union Hall or Union office, have not filed any grievances, have not provided the Union with their

contact information, and do not know and cannot identify their local or district Union representatives (Doc. 20, Ex. 1; Doc. 24 ¶ 6);

-Attendance at monthly Union meetings declined by more than half (Doc. 11 at 22-23);

-No employees will volunteer to serve as Union stewards (*Id*. at 23); and

-No employees file grievances with the Union (*Id*.).

The Board has not shown how an injunction will "preserve the Union's effectiveness as the bargaining representative of Respondent's employees." (Doc. 11 at 22.)  It appears the Board has conceded any "effectiveness" was lost well before the violations at issue here.  The Board argues that without an injunction, union representatives are not able to access the facility, and "bargaining unit members have no representative on site with whom to file grievances."  (Doc. 11 at 24.)  Yet, The Board admits that prior to the alleged unlawful labor practices at issue, no one was filing grievances.  There is insufficient evidence that the specific actions of withdrawing Union recognition, and thereafter denying Union access at NTN's plant, have caused such damage in this case that injunctive relief is required to ensure

that a future order in favor of the Board would not be rendered meaningless.

IV. Conclusion.

The Eleventh Circuit has cautioned that "injunctive relief pursuant to § 10(j) is an extraordinary remedy, to be requested by the Board and granted by a district court only under very limited circumstances." *S. Lichtenberg & Co.*, 952 F.2d at 374. The Board has not established that those limited circumstances are present here. Accordingly, the Board's Petition for Injunction Under Section 10(j) of the NLRA is DENIED. A separate order will be entered.

Done this <u>11th</u> day of <u>July 2011</u>.

_____
L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
139297